**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

CARLOS R. SARRIA ORTEGA,

      Plaintiff,

          v.

HON. JUAN AGOSTO ALICEA, ET AL.,

      Defendants.

CIVIL NO. 02-2038 (PG)

**OPINION AND ORDER**

On July 16, 2004, plaintiff's counsel filed an informative motion regarding the death of plaintiff. (Docket No. 104)  Now before the Court is the Magistrate Judge's Report and Recommendation anent defendants' motion for summary judgment on plaintiff's 42 U.S.C. § 1983 political discrimination claim. (Docket No. 110, filed August 3, 2004)  Although the  Report registers plaintiff's passing, it does not evaluate whether his claim survives.

Having carefully reviewed the applicable law, the Court holds that a section 1983 claim for political discrimination in the workplace is extinguished upon death under forum law.  Furthermore, inasmuch as plaintiff's heirs have neglected to file a motion for substitution, the action must be dismissed under Fed.R.Civ.P. 25.  In the alternative, the Court approves and adopts the Report and Recommendation, which ultimately concludes that defendants' motion for summary judgment should be granted.

**I. Background**

The parties having lodged no objections to the Magistrate Judge's recitation of the facts, this ensuing version is culled from the same. Plaintiff Carlos R. Sarria-Ortega has been a life-long member of the New Progressive Party, although his participation has always been limited to voting for the Party's candidates.  On December 18, 1995, plaintiff began working at

the Government Developement Bank ("GDB") as Operations Supervisor of the Human Resources Department.  He was reclassified to the position of Payroll Manager on November 16, 1998.  Afterward, the position of Pre-Intervention Director became available, and plaintiff was temporarily named to the vacancy on June 14, 2000.

As per the GDB's "Class Specification," the position of Pre-Intervention Director required a Bachelor's Degree in Business Administration with a major in accounting or finance from an accredited university, as well as five years' experience in pre-intervention or accounting, with at least one year's prior experience in banking, and two year's prior experience in personnel supervision.

When the Vice-President of Operations, Mr. Harry Torres (hereafter "Torres"), inquired whether plaintiff qualified for that position, he was advised that plaintiff did not because he lacked the required concentration. Torres then issued instructions for modification of the position's requirements so as to expand the pool of candidates.  A "position profile" was prepared accordingly, lessening the requirements.  No opinion was sought from the GDB's legal department regarding the propriety of the alteration.  As per the "position profile," the requirements were now a bachelor's degree in any discipline and five years' experience, or a combination thereof.

Following the request for applications on August 16, 2000, five candidates applied.  Thereafter, on August 28, 2000, plaintiff was informed that he was being promoted to the position of Pre-Intervention Director, effective September 1, 2000, subject to a six-month probationary period.  In a letter dated October 2, 2000, addressed to Mr. Torres, one of the applicants for the position, Jorge L. Silén, questioned plaintiff's appointment, objecting to the selection process.  The matter was referred  to the GDB's legal office on December 7, 2000, but no action was taken.

Following the general elections in November 2000, the political power base shifted from the New Progressive Party to the Popular Democratic Party.

Plaintiff's probationary term was extended on December 13 until May 31, 2001. The change in the central administration took place in January 2001, and defendant Juan M. Agosto-Alicea was appointed President of the GDB. The incoming administration requested a review of all personnel transactions performed from July to December 2000, retaining Attorney Alba Caballero to conduct the study.

Attorney Caballero rendered her report on April 9, 2001 opining that plaintiff's appointment was null and void because the requirements of the position were arbitrarily amended in violation of the principles of merit found in the Personnel Regulations. She also noted that other GDB personnel that met the original minimum requirements were not selected, and that the complaint of an employee who had questioned plaintiff's appointment was ignored.

Plaintiff was notified on May 31, 2001, that irregularities had been detected, and that the GDB intended to void his appointment and reinstate him to his prior position. Plaintiff was advised that he would be afforded an informal hearing prior to the reinstatement on June 7, 2001.

On July 12, 2001, defendant Agosto-Alicea notified plaintiff that his appointment was null because he did not meet the minimum requirements of the position, advising him that he was to be reinstated to his prior position of Payroll Manager on July 17, 2001. Plaintiff formally appealed the decision to the Board of Directors of the GDB. An examining officer was appointed and a formal hearing held where plaintiff argued inter alia that his demotion constituted unequal treatment based on his membership in the New Progressive Party. A Resolution was rendered by June 18, 2002, determining that plaintiff's appointment was null and void because it was made in violation of the GDB's Personnel Regulations.

Plaintiff did not appeal, opting to file the instant complaint on July 9, 2002. He advanced a claim under 42 U.S.C. § 1983 alleging that he was demoted by the defendants, the GDB and its President, defendant Agosto-Alicea in his

official capacity, for politically discriminatory reasons. Plaintiff further contended that he was not afforded due process prior to the demotion. In addition, he invoked the Court's supplemental jurisdiction to advance claims pursuant to state law.

On October 28, 2003, defendants moved for summary judgment arguing that this action was precluded by reason of res judicata. (Docket No. 46)  The defendants further submitted that plaintiff failed to establish a prima facie case of political discrimination because his appointment was null and void under the applicable GDB personnel regulations.  Id.  They also maintained that plaintiff's due process claim should fail because he received all the process that was due.  Id.   In addition, defendant Agosto-Alicea asserted an entitlement to qualified immunity.  Id.

Following referral (Docket No. 93, filed May 10, 2004), the Magistrate Judge reasoned that plaintiff's pursuit of administrative relief barred the present claim under the doctrine collateral estoppel. (Docket No. 110 at 18) In the alternative, the Magistrate Judge concluded that plaintiff had failed to state a political discrimination claim under section 1983 because he offered no proof that there was any political animus involved in his demotion, and because defendants would have demoted him anyway, in light of the clear irregularities in his appointment. Id. at 25-26. In evaluating plaintiff's due process claim, the Magistrate Judge found that plaintiff had been accorded notice and a hearing prior to his termination, and that no further process was due. Id. at 27. Finally, the Magistrate Judge determined that defendant Agosto-Alicea was entitled to qualified immunity. Id. at 30.

Plaintiff's counsel filed objections to the Report and Recommendation, arguing that if anything was to be given preclusive effect, it was the GDB's "first administrative process" where the GDB implicitly affirmed the regularity of plaintiff's appointment by not responding to the complaint filed. Counsel also requested that the Court grant summary judgment on the political

discrimination claim, conclusorily asserting that defendants had raised irregularities in plaintiff's appointment as a pretext for discrimination. Further evidence not before the Magistrate Judge was adduced in support of the assertion.

Defendants countered the objections, briefly arguing that these were violated the specificity requirements, that the appended translations were not properly certified, and that there was no right to raise new arguments or produce new evidence not presented to the Magistrate Judge.  (Docket No. 119) None of the parties objected to the Magistrate Judge's recommendations regarding plaintiff's due process claim and defendant Agosto-Alicea's invocation of qualified immunity.

Prior to the issuance of the Report and Recommendation, on July 16, 2004, an informative motion was filed regarding plaintiff's death.  (Docket No. 104) The Magistrate Judge's Report and Recommendation did not address whether plaintiff's claims were extinguished at his death, and defendants have not raised the issue.  The record reveals that to date, plaintiff's heirs have not filed a motion for substitution.

## II. DISCUSSION

The Court first analyzes whether plaintiff's section 1983 political discrimination claim extinguished at his passing.  It then proceeds to treat the failure of plaintiff's heirs to file a motion for substitution following his death.  Finally, the Court reviews the Magistrate Judge's Report and Recommendation regarding the merits of this action.

A. Extinction of Plaintiff's Section 1983 Claim

Rule 25(a)(1) of the Federal Rules of Civil Procedure governs the substitution of parties after death, providing for such substitution where the claim is not extinguished by the death of the party.  In Robertson v. Wegmann,

436 U.S. 584 (1978), the Supreme Court held that the law of the forum state is
"the principle reference point in determining survival of civil rights actions"
under section 1983.  <u>Robertson</u>, 436 U.S. at 590; <u>Moor v. Alameda County</u>, 411
U.S. 693, 703 (1973) (affirming that pursuant to 42 U.S.C. § 1988, state
survivorship statutes may allow the survival of actions brought under § 1983);
<u>Gonzalez Rodriguez v. Alvarado</u>, 134 F.Supp.2d 451, 454 (D.P.R. 2001).  The Court
therefore refers to forum law.

    Puerto Rico's Civil Code contains no uniform provision regarding the
transmission of claims upon death, and neither has the Puerto Rico Supreme Court
determined whether a political discrimination claim survives the plaintiff's
death.  However, the Puerto Rico Supreme Court has generally determined that a
civil cause of action to redress bodily injuries or moral suffering sustained
prior to death may be transmitted to one's heirs so long as it is not "so
personalized that its exercise depends on the continued natural life of the
deceased." <u>Viuda de Delgado v. Boston Ins. Co.</u>, 101 D.P.R. 598, 602 (1973)
(translation supplied).  The Puerto Rico Supreme Court has also determined that
a right may be transmitted "so long as it is not among the strictly personal
rights that die with the person." <u>Consejo de Titulares v. C.R.U.V.</u>, 132 D.P.R.
707 (1993).  <u>See also</u> <u>Sucesión Álvarez v. Secretario de Justicia</u>, 2000 J.T.S.
21 (citing with approval the research of the Spanish jurist José Puig Brutau,
who reasons that those rights and obligations of "personalisimo" or
"intrinsically personal" character abate with the decedent).  Among the non-
transmissible rights enumerated by the Puerto Rico Supreme Court are the
following: the usufruct, use and habitation, the annuity of the deceased, the
patria potestas, support, guardianship, personal easements, workman's
compensation rights, and pension benefits.  <u>See</u> <u>Consejo de Titulares v.</u>
<u>C.R.U.V.</u>, 132 D.P.R. 707 (collecting cases).

    In applying these tests, the Puerto Rico Supreme Court has not
distinguished between the transmission of a right and the transmission of a

cause of action that arises from the violation of the right.  As such, it has held that an heir may inherit a civil cause of action to redress bodily injuries or moral suffering sustained prior to death, which is separate and distinct from the heir's own wrongful death action.  Viuda de Delgado, 101 D.P.R. at 602.  It did so rejecting "the old aphorism that the personal action dies with the person (actio personalis moritur cum persona) ... which besides being anachronistic is incompatible with our civil-law system in its fundamental premise ... that the heir is a continuation of the juridical personality of the deceased."  Consejo de Titulares v. C.R.U.V., 132 D.P.R. 707 at n.2 (1993)(citing Viuda de Delgado, 101 D.P.R. at 602) (emphasis supplied).

Although it has held that such a cause of action is inheritable, the Puerto Rico Supreme Court has also determined that an heir may not exercise a decedent's cause of action for workman's compensation rights, pension rights nor even unpaid backwages, because these are so inherently "personal."  Alonso García v. Comisión Industrial, 103 D.P.R. 183, 184 (1974).  Accordingly, this Court interprets that under Puerto Rico law, a cause of action arising from a violation of an inherently personal right is generally not transmissible.

In the case at bar, plaintiff advanced a section 1983 action, alleging that defendants had infringed upon his constitutional rights under the First and Fourteenth Amendments while acting under color of state law. (Docket No. at 2-3).  Given the philosophical and historical underpinnings of the rights guaranteed by the First and Fourteenth Amendments, it is by no means a distortion to classify these as inherently personal.  The annals of the Supreme Court teem with eloquent celebrations of these rights as individual and inalienable.

By way of illustration, in describing the interface between the First and Fourteenth Amendments, the latter carrying the principles of the First to the States, the Supreme Court reasoned that "it is as much a guarantee to individuals of their personal right to make their thoughts public and put them

before the community ... as it is a social necessity required for the maintenance of our political system and an open society." <u>Curtis Pub. Co. v. Butts</u>, 388 U.S. 130, 149-150 (1967) (citation omitted).  The Court went on to declare that "[i]t is because of the personal nature of this right that we have rejected all manner of prior restraint on publication..." reasoning that "the dissemination of the individual's opinions on matters of public interest is for us, in the historic words of the Declaration of Independence, an 'unalienable right' that 'governments are instituted among men to secure.' " <u>Id.</u>

     The Supreme Court has also reviewed the philosophical foundations of the right to work, alluding to the Hobbesian and Lockian doctrines, specifically holding that the right to work is itself inherently personal.

> Included in the right of personal liberty and the right
> of private property -- partaking of the nature of each
> --is the right to make contracts for the acquisition of
> property.   Chief  among  such  contracts  is  that  of
> personal employment, by which labor and other services
> are exchanged for money or other forms of property.  If
> this right be struck down or arbitrarily interfered
> with, there is a substantial impairment of liberty in
> the long-established constitutional sense. The right is
> as essential to the laborer as to the capitalist, to the
> poor as to the rich; for the vast majority of persons
> have no other honest way to begin to acquire property,
> save by working for money.

<u>Senn v. Tile Layers Protective Union, Local No. 5</u>, 301 U.S. 468, 487-488 (1937) (quotation omitted).  "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure." <u>Id.</u> (citing <u>Truax v. Raich</u>, 239 U.S. 33, 41 (1915)).

     It being an incontrovertible proposition that the rights protected by the First and Fourteenth Amendments are individual rights, it follows that under Puerto Rico law, a cause of action arising from the on-the-job violation of such inherently personal rights is generally not transmissible.  Indeed, the Supreme Court of Puerto Rico has held that similar causes of action vindicating other employee rights are not.  <u>See e.g.</u> <u>Maldonado v. Tribunal Superior</u>, 100 D.P.R.

370 (1972) (decedent's pension rights are so personal that these are never included in his estate); <u>Alonso Garcia v. Comision Industrial</u>, 103 D.P.R. 183, 186 (1974) (likewise finding that workman's compensation rights are not inheritable and that heirs cannot recover the decedent's earned but unpaid backwages); <u>see also</u> <u>Consejo de Titulares v. C.R.U.V.</u>, 132 D.P.R. 707 (1993) (collecting cases).

Relatedly, the Supreme Court of Puerto Rico has determined that an employee spouse's causes of action are not community property because any indemnification represents the employee spouse's lost aptitude for work, which is inherently personal. <u>Robles Ostolaza v. U.P.R.</u>, 96 D.P.R. 583, 592 (1968); <u>see also</u> <u>Díaz v. Alcalá</u>, 140 D.P.R. 959 (1996) (holding that a professional title is inherently personal and hence not community property).

Although the Supreme Court of Puerto Rico has held that a claim for damages is generally inheritable, <u>Viuda de Delgado</u>, 101 D.P.R. at 602, that line of cases is distinguishable because it does not necessarily authorize the transmission of claims arising from violations of constitutionally guaranteed individual rights. Furthermore, the Supreme Court of Puerto Rico has refused to extend the fiction of continued juridical personality to claims stemming from violations of employee rights. <u>See e.g.</u> <u>Consejo de Titulares v. C.R.U.V.</u>, 132 D.P.R. 707.

Also of import is the fact that the bulk of the relief requested by plaintiff is per se non-transmissible. Assuming that plaintiff's claim were to prosper, his heirs could not recover his unpaid backwages under forum law. <u>See</u> <u>Alonso Garcia</u>, 103 D.P.R. at 186. A fortiori, they could not achieve his reinstatement, as that is precisely the sort of personal right which is coextensive with the life of the titleholder. While the Court could splinter plaintiff's damage claims, allowing his heirs to assert them, to do so would be incongruous with the "intrinsically personal" which underlies the right and renders the other relief requested by plaintiff per se non-transmissible.

The political discrimination action advanced here being so closely related to the plaintiff's rights as an employee, and the Puerto Rico Supreme Court having previously held that similar rights are intrinsically personal, the Court must conclude that the instant cause of action is also intrinsically personal and hence non-transmissible.

This holding does not offend the purposes of section 1983. The Courts of Appeals have uniformly determined that state law cannot effectively abate a section 1983 claim arising from a violation of federal constitutional rights which cause the decedent's death; that instead such a situation warrants the application of a federal rule of decision pursuant to section 1988. See Banks ex rel. Banks v. Yokemick, 177 F.Supp.2d 239, 250 (S.D.N.Y. 2001) (collecting cases). Here, however, plaintiff's death was unrelated to the circumstances giving rise to his complaint, and the Court therefore finds that a federal rule of decision cannot displace state law.

Having determined that a claim for political discrimination pursuant to section 1983 extinguishes with the death of the plaintiff, and that the purposes of section 1983 are not thereby offended, the instant complaint is **DISMISSED WITH PREJUDICE.**

B. Substitution of Parties at Death

Even if the cause of action were not extinguished at plaintiff's passing, Rule 25(a)(1) of the Federal Rules of Civil Procedure requires that a "motion for substitution ... [must be] made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death." Fed.R.Civ.P. 25(a)(1). It further provides that if the motion for substitution is not timely made, then the "action shall be dismissed as to the deceased party." Id.

In the case at bar, counsel filed an informative motion regarding plaintiff's death on July 16, 2004. (Docket No. 104) A receipt of that filing

was generated by the Court's electronic case management system, certifying that notice was sent to all parties, <u>id.</u>, and said receipt constitutes the equivalent of service. <u>See</u> Local Rule 5.1(b)(2). As such, the Court finds that the 90-day period began to run on July 16, 2004, the day plaintiff's death was formally suggested upon the record and notice served upon the parties. <u>See</u> Fed.R.Civ.P. 25(a)(1). Over a year having elapsed without the filing of a motion for substitution, and without nary a word from plaintiff's heirs, the Court finds that Fed.R.Civ.P. 25(a)(1) compels dismissal of plaintiff's action. <u>See e.g.</u>, <u>Unicorn Tales, Inc. v. Banerjee</u>, 138 F.3d 467, 470 (2d Cir. 1998) (affirming dismissal for failure to timely file motion to substitute); <u>Ray v. Koester</u>, 85 Fed.Appx. 983, 985 (5th Cir. 2004) (unpublished disposition) (affirming dismissal following failure to timely file motion to substitute); <u>Kaubisch v. Weber</u>, 408 F.3d 540, 542 (8th Cir. 2005) (affirming dismissal for failure to timely file motion to substitute). This compalint is therefore **DISMISSED WITH PREJUDICE** under Fed.R.Civ.P. 25(a)(1).

## C. The Report and Recommendation

Although the Court has already determined that the claim is extinguished and procedurally barred, in the alternative, it proceeds to pass on the merits. The Magistrate Judge issued a Report and Recommendation concluding that defendants were entitled to summary judgment because (1) plaintiff's claim is collaterally estopped; (2) he has failed to state a political discrimination claim; (3) he has failed to state a due process claim; and (4) defendant Agosto-Alicea is entitled to qualified immunity.

Following the issuance of a Report and Recommendation, the Court reviews *de novo* the matters delimited by timely and appropriately specific objections. <u>See</u> 28 U.S.C. § 636(b) (2004), Fed. R. Civ. P. 72(b) (2004), and Local Rule 72(d) (2004); <u>see also</u> <u>Borden v. Secretary of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987) ("Appellant was entitled to a de novo review by the

district court of the [Magistrate's] recommendations to which he objected, however he was not entitled to a de novo review of an argument never raised.") (citation omitted); <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1, 3-4 (1st Cir. 1999). An objection is timely if filed within ten days of receipt of the Magistrate's Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b), Fed. R. Civ. P. 72(b), and Local Rule 72(d). The Court thereafter "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." <u>Id.</u>

Plaintiff's counsel filed objections to the Report and Recommendation, arguing that if anything was to be given preclusive effect, it was the GDB's "first administrative process" where the GDB implicitly affirmed the regularity of plaintiff's appointment by not responding to the complaint filed by an employee who was not selected for the position. Counsel also requested that the Court grant summary judgment on the political discrimination claim, conclusorily asserting that the defendants invented irregularities in plaintiff's appointment as a pretext for their political machinations. He further submitted new evidence not presented to the Magistrate Judge in support of the assertions.

The argument that the first administrative "process" should be given res judicata effect is legally untenable. The elements of a res judicata claim under federal law are: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." <u>Colonial Mortgage</u>, 324 F.3d 12 at 16 (1st Cir. 2003); <u>see also</u> <u>Gonzalez-Pina v. Rodriguez</u>, 407 F.3d 425, 430 (1st Cir. 2005). Here, there was no decision resulting from the first administrative "process," let alone a final judgment on the merits. Furthermore, plaintiff was not actually a party to what he calls the first administrative "process." And more importantly, it is absurd that an agency's unjustifiable refusal to decide might

be treated with the deference accorded to a judgment on the merits.   This objection is hence **OVERRULED.**

As the Magistrate Judge correctly determined, plaintiff is collaterally estopped from raising the issue of the legality of his appointment.   To establish collateral estoppel, the following factors must be met:

> (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order).

Gonzalez-Pina, 407 F.3d at 430 (quotations and citations omitted).   Here, all of these elements are met by the agency's adjudication, and thus plaintiff is estopped from raising the issue of whether his promotion was null and void as a violation of internal GDB procedures.   "It is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself was unable to consider the federal claim as such." Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 31 (1st Cir. 1998).   Given the agency's determination, plaintiff could not consistently prevail on his federal claim.   Id.   Therefore, as the Magistrate Judge correctly reasoned,  plaintiff is estopped from pursuing his political discrimination claim.

The last objection assails the Magistrate Judge's alternative conclusion that plaintiff failed to state a claim of political discrimination.   The plaintiff bears the initial burden of showing that political discrimination was a substantial or motivating factor in the defendant's employment decision. Baez-Cruz, 140 F.3d at 28.   Here, plaintiff openly admitted that he was never politically active and that he never told anyone at the GDB of his political affiliation.   See Docket No. 110 at 9, citing Plaintiff's Deposition, Docket No.

59, Ex. 23 at 96-100.  Plaintiff mentioned, however, that a former supervisor once told him that he would be treated the same even though he was a member of the opposite party, although he stated that he was not aware if the defendants knew of his political affiliation.  <u>Id.</u>  Therefore, given plaintiff's pivotal admission, the Court must hold that he failed to establish a prima facie case of political discrimination.

Moreover, even if plaintiff had succeeded, the Magistrate Judge reasoned that defendants had provided a non-discriminatory reason for their actions. There is no trialworthy issue if a defendant can show he would have reached the same decision in the absence of the protected conduct.  See <u>Crawford-El v. Britton</u>, 523 U.S. 574, 593 (1998) (<u>citing</u> <u>Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle</u>, 429 U.S. 274, 287 (1977)).  In light of the undisputed irregularities in plaintiff's promotion, to wit, plaintiff's failure to qualify, his recruitment under a scheme not sanctioned by the agency's legal division, the refusal to investigate the objections of other employees, and given the findings of the examining officer who ultimately determined that the selection process was void under the personnel regulations, the conjectures of political discrimination are simply not borne out by the record.  The objection to the finding that plaintiff failed to state a claim is therefore **OVERRULED.**

The Court will not consider evidence or arguments not presented to the Magistrate Judge.  <u>Borden v. Secretary of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1, 3-4 (1st Cir. 1999); <u>Sackall v. Heckler</u>, 104 F.R.D. 401, 402 (D.R.I., 1984).  Furthermore, plaintiff's counsel filed no objections to the Magistrate Judge's recommendations regarding plaintiff's due process claim and defendant Agosto-Alicea's invocation of qualified immunity.  The failure to raise objections waives the right of further review.  <u>Id.</u>  Having found no clear error in the Magistrate Judge's recommendations, the same are therefore **APPROVED and ADOPTED,** and defendant's motion for summary judgment, **GRANTED.**

### III. Conclusion

Having carefully reviewed the law of the forum, the Court determined that section 1983 claims for political discrimination in the workplace are extinguished upon the death of the claimant, thus requiring that plaintiff's complaint be **DISMISSED WITH PREJUDICE.**  Even if the claim survived, the failure of plaintiff's heirs to comply with Fed.R.Civ.P. 25 also compels dismissal.  In the alternative, the Court overruled the objections to the Magistrate Judge's Report and Recommendation, and **APPROVED AND ADOPTED** the same, granting defendant's motion for summary judgment.  Judgment shall be issued accordingly.

**SO ORDERED.**


In San Juan, Puerto Rico, September 21, 2005.


S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE